Case 4:21-mj-01612 Document 10 Filed on 08/02/21 in TXSD Page 1 of 10

United States District Court
Southern District of Texas

**ENTERED**
August 02, 2021
Nathan Ochsner, Clerk

AO 472 (Rev. 11/16) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| | |
|---|---|
| United States of America )<br>v. )<br> )<br>Andrew Quentin Taake )<br>*Defendant* ) | Case No. 4:21-mj-01612 |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
    ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
    ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
    ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
    ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
    ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
      **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
      **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
  ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the

defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

## Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☒ History of violence or use of weapons
☒ History of alcohol or substance abuse
☐ Lack of stable employment
☐ Lack of stable residence
☐ Lack of financially responsible sureties

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

☐ Lack of significant community or family ties to this district
☐ Significant family or other ties outside the United States
☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
☐ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:
See attached pages.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: 8/2/2021

*Christine A Boyan*

United States Magistrate Judge

**OTHER REASONS OR ADDITIONAL EXPLANATION.**

The Defendant is charged in a Criminal Complaint from the District of Columbia with violations of 18 U.S.C. § 1512(c)(2)-Obstruction of an Official Proceeding; 18 U.S.C. §§ 111(a)(1) and (b)-Felony assaulting, resisting, or impeding certain officers; 18 U.S.C. §231(a)(3)-Obstruction of law enforcement during civil disorder; 18 U.S.C. §§ 1752(a)(1), (2), and (4)-Entering or remaining, disorderly and disruptive conduct, and engaging in physical violence in a restricted building or grounds; and 40 U.S.C. §§ 5104(e)(2)(D)(E)(F) and (G)-disorderly conduct in a Capitol building/parading demonstrating, or picketing in a Capitol building. The first four offenses are felony charges and the fifth offense is a misdemeanor charge. The United States moved to detain the Defendant under § 3142(f)(1) and (f)(2). The Court concludes that the charges for violating 18 U.S.C. § 111 qualify as crimes of violence for which a motion to detain is justified under § 3142(f)(1). *See United States v. Klein*, ___ F. Supp. 3d ___, 2021 WL 1377128 (D.D.C. April 12, 2021) (finding that charges brought under sections 111(a) and (b) qualify as crimes of violence which render a defendant subject to detention under 18 U.S.C. 3142(f)(1)(A).))

After considering the allegations in the criminal complaint and affidavit in support, the pretrial services report, the testimony presented at the hearing, and the factors contained in 18 U.S.C. § 3142(g), the Court concludes that the United States met its burden to prove by clear and convincing evidence that no combination of conditions can reasonably assure the safety of the community and by a preponderance of the evidence that no combination of conditions can reasonably assure the appearance of the Defendant. The Court bases the order of detention on the following findings and considerations of the factors in § 3142(g):

**(1). The nature and circumstances of the charged offense.**

With respect to individuals charged in the January 6 breach of the United States Capitol, courts in the charging district have identified several offense characteristics which serve as "guideposts" for assessing the nature and circumstances of the charged offense and the factors set forth in § 3142(g):  1) whether the defendant is charged with felony or misdemeanor offenses; 2) whether the defendant engaged in prior planning before arriving at the Capitol; 3) whether the defendant carried a dangerous weapon during the riot; 4) whether the defendant coordinated with other participants before, during or after the riot; 5) whether the defendant assumed a formal or *de facto* leadership role in the assault; and 6) the nature of the defendant's words and movements during the riot, including whether he damaged federal property or threatened or confronted law enforcement or otherwise promoted efforts to disrupt the certification of the electoral vote count during the riot.  *U.S. v. Klein*, 2021 WL 1377128 at *7.

Four of the five charges against Mr. Taake are felony charges and one is a misdemeanor charge.  Mr. Taake is alleged to have physically assaulted a law enforcement officers by spraying them in the face with bear spray (a stronger form of pepper spray, formulated to incapacitate a grizzly bear), and by striking them with a wire whip.  The Court finds the bear spray and the wire whip are dangerous weapons in the context of this case.  The evidence at the hearing did not demonstrate that Mr. Taake assumed a leadership role in the riot other than by physically assaulting law enforcement officers.  The evidence reflected prior planning by Mr. Taake before he arrived at the Capitol.  For example, he arrived at the riot with weapons that could be used to commit assault—the bear spray and the wire whip.  In addition, photographs introduced into evidence and the testimony at the trial established that Mr. Taake had a walkie-talkie or 2-way radio fastened to his jacket.  This equipment evidences some intent or plan to communicate with others. Lastly, after spraying law enforcement with bear spray and striking them with a wire

whip, Taake entered the U.S. Capitol building with those weapons.  Like other courts before it, this Court finds Mr. Taake's "steps taken in anticipation of an attack on Congress speak volumes to both the gravity of the charged offense[s], as a premeditated component of an attempt to halt the operation of our democratic process, and the danger [he] poses."  Klein, 2021 WL 1377128 at * 8 (quoting *United States v. Chrestman*, ___ F. Supp. 3d _____, 2021 WL 765661 at *8 (D.D.C. Feb. 26, 2021)).

In addition, the charged offenses carry penalties ranging from 6 months in prison (misdemeanor) to 5, 10, and 20 years (2 counts) in prison.  As discussed below with respect to Mr. Taake's personal history and characteristics, he has had deferred adjudication revoked and probation extended in the past.  The possibility of a lengthy prison sentence followed by up to three years of supervision constitute evidence of a risk of flight or non-appearance.

**(2) The weight of the evidence.**

This is the least important factor the Court considers when deciding the issue of detention.  However, the evidence presented at the hearing is substantial and consists of still photographs taken from videos obtained from surveillance cameras, law enforcement body cameras, and social media.  The evidence also includes text messages between Mr. Taake and a woman on the dating app Bumble in which he admits to being present at the January 6 Capitol riot, but claims he was peacefully protesting. The exhibits introduced at the hearing also include photographs of the clothing Mr. Taake can be seen wearing in the videos and which was recovered during a search of his home incident to his arrest.  The photographs of items recovered from his home include 2 walkie-talkies that appear to be the same as the one that can be seen fastened to his jacket in photos from the January 6 riot.  Agents also discovered in his home, bear spray and a

wire whip like those he can be seen carrying and using in photos from January 6. The testimony presented at the hearing included testimony regarding the flight information, method of payment, and phone number associated with a plane ticket for Andrew Taake from Houston to D.C. on January 5, 2021 and a return ticket from D.C. to Houston on January 7, 2021. Finally, although defense counsel stated at the hearing that Mr. Taake was no longer contesting identity, the FBI agent testified regarding the FBI's process for identifying and locating Mr. Taake and identified him in court.

**(3) The history and characteristics of the Defendant.**

Mr. Taake is 32 years old and has lived in the Houston area for most of his life. He lives alone and despite having been convicted of a felony, he keeps multiple firearms in his home which is a violation of federal law. He owns a U.S. Passport and says he does not know where it is, but has never reported it lost or stolen. He last traveled internationally two years ago when he went to the Phillipines. Mr. Take is self-employed as a handyman and the owner of a pressure washing business. He reported a history of alcohol and drug abuse and successful completion of inpatient substance abuse treatment in 2007. He denies the use of any drugs since 2014.

Mr. Taake's criminal history includes a 2005 misdemeanor charge for unlawful carrying of a weapon, 2007 conviction for possession of a controlled substance; a 2007 charge for failure to identify (dismissed); a 2008 felony conviction for intoxication assault with a vehicle (six years probation, extended for an additional year); and a currently pending 2016 charge for online solicitation of a minor for which he was given a $20,000 bond. Mr. Taake was on bond when he traveled to D.C. and carried bear spray, a metal whip, and a walkie talkie to the Capitol on January 6, 2021, and then sprayed law enforcement officers in the face with bear spray and

struck them with a metal whip. He was on bond when he entered the U.S. Capitol Building in violation of the law and still carrying the weapons. Mr. Taake was on bond when he told the FBI agents who effected his arrest that he had not been at the Capitol on January 6. The evidence presented to the Court demonstrates by clear and convincing evidence Mr. Taake's willingness to assault law enforcement officers, violate bond conditions, and be untruthful with law enforcement.

**(4) Nature and seriousness of the danger to community or individuals.**

The United States presented clear, unrebutted, and convincing evidence that Mr. Taake assaulted law enforcement officers with bear spray and a metal whip. As the D.C. Circuit has stated: "those who actually assaulted police officers and …planned or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capital after others cleared the way." *U.S. v. Klein*, at *11 (quoting *U.S. v. Munchel*, 991 F. 3d 1273, 1284 (D.C. Cir. 2021). Based on Mr. Taake's conduct on January 6 as described during the testimony and as seen in the exhibits, the fact that was on bond when he planned for and committed those assaults, and the weapons and ammunition discovered in Mr. Taake's home and truck (Exhibits 30-36), including an M4 assault rifle with a round in the chamber, a 9 mm pistol with an extended magazine, and shotgun with an extended magazine, the Court finds the nature and seriousness of the danger to the community to be very great. In addition, Mr. Taake's pending charge of solicitation of a minor demonstrates a serious risk of harm to individuals posed by his release.

**Final findings based on the 3142(g) factors:**

Unlike situations involving individuals who may have gone to the Capitol to protest peacefully, but were swept up by the actions of the crowd that day, the evidence demonstrates that Mr. Taake made preparations for the use of violence by taking bear spray and a metal whip to the Capitol and then assaulted law enforcement officers with the bear spray and metal whip. The evidence at the hearing demonstrated that Taake's actions were his own and that the crowd functioned merely as cover for him to recede into after assaulting officers with bear spray and a metal whip. The only evidence of coordination with others is Mr. Taake's possession of a walkie-talkie that was fastened to his jacket. Overall, Mr. Taake's willingness to physically assault officers with bear spray and a metal whip, **while on bond and conditions of release for the felony offense of solicitation of a minor**, demonstrate by clear and convincing evidence that he poses a concrete threat both to the community and to specific individuals.

Mr. Taake faces a lengthy sentence followed by supervision if released. He is currently facing state charges of soliciting a minor on-line. He has traveled internationally within the last two years and claims not to know where his passport is and has not reported it lost or stolen. Mr. Taake has a history of substance abuse and was not truthful with officers who arrested him. These factors establish by a preponderance of the evidence that Mr. Taake poses a risk of flight or non-appearance.

Having found that clear and convincing evidence shows Mr. Taake poses a concrete risk of danger to the community and a preponderance demonstrates a risk of flight or non-appearance, the Court also finds those risks cannot be mitigated by conditions of release. The Court has no confidence in Mr. Taake's ability or willingness to abide by condition set by this

Court.  The unrebutted testimony at the hearing established that Mr. Taake was on bond for online solicitation of a minor when he prepared for and committed a violent assault on law enforcement.  In addition, Mr. Taake's criminal history includes revocation of deferred adjudication and the addition of an extra year to a sentence of probation.  Finally, the evidence at the hearing demonstrates that Mr. Taake was not truthful with law enforcement officers when he was arrested on these charges because he told them he wasn't present at the Capitol on January 6.  The Court finds the combination of these factors establish a lack of confidence in Mr. Taake's willingness to follow conditions of release set by this Court.